PAUL H. ACHITOFF      #5279
DAVID L. HENKIN      #6876
EARTHJUSTICE
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email: pachitoff@earthjustice.org
       dhenkin@earthjustice.org

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 24 2010

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAI'I

| | |
|---|---|
| HUI HOʻOMALU I KA ʻĀINA; CONSERVATION COUNCIL FOR HAWAIʻI; CENTER FOR BIOLOGICAL DIVERSITY; and AMERICAN BIRD CONSERVANCY,<br><br>                    Plaintiffs,<br><br>          v.<br><br>KAUAʻI ISLAND UTILITY COOPERATIVE,<br><br>                    Defendant. | Civil No. CV10 00169 ACK LEK<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Hui Hoʻomalu i Ka ʻĀina, Conservation Council for Hawaiʻi, the

Center for Biological Diversity, and the American Bird Conservancy (hereinafter

referred to collectively as "plaintiffs") complain of defendant Kauaʻi Island Utility

Cooperative ("KIUC") as follows:

## INTRODUCTION

1.      The population of the Newell's shearwater (*Puffinus auricularis*

*newelli*) on Kauaʻi is crashing, with a decline of seventy-five percent (75%) in only

fifteen years (1993-2008).  The illegal operations of defendant and its predecessor,

Kauaʻi Electric ("KE"), bear substantial responsibility for that precipitous decline,

with power lines, other utility structures, and utility-owned and operated

streetlights killing and injuring many thousands of shearwaters since the species'

listing in 1975 as a threatened species pursuant to the Endangered Species Act

("ESA"), 16 U.S.C. §§ 1531 et seq.[1]

2.      Defendant's operations also kill and injure Hawaiian petrels

(*Pterodroma sandwichensis*), which were listed as an endangered species in 1967.[2]

3.      This action seeks an order compelling defendant's compliance with

the Endangered Species Act.  Specifically, as described more fully herein,

---

[1] At the time of listing, the species was known as Newell's Townsend's
shearwater (*Puffinus auricularis newelli*).  See 50 C.F.R. § 17.11.

[2] At the time of listing, the species was known as the Hawaiian dark-rumped
petrel (*Pterodroma phaeopygia sandwichensis*).  See 50 C.F.R. § 17.11.

plaintiffs seek a declaration that, in the absence of a lawful incidental take permit, defendant's activities violate the ESA's prohibition on unpermitted "take" of federally listed species. Plaintiffs also seek appropriate injunctive relief to protect Newell's shearwaters and Hawaiian petrels on Kaua'i from further harm from defendant's illegal activities.

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over the claims for relief in this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States); 16 U.S.C. § 1540(c) (action arising under the ESA); 16 U.S.C. § 1540(g) (citizen suit provisions of the ESA); and 28 U.S.C. §§ 2201-2202 (power to issue declaratory judgments in cases of actual controversy).

5.     On January 20, 2010, plaintiffs served defendant, as well as Secretary of the Interior Ken Salazar, by Federal Express of the violations of law alleged herein, as required by ESA section 11(g)(2)(A), 16 U.S.C. § 1540(g)(2)(A).

6.     Plaintiffs have formally demanded that defendant bring its operation into compliance with the ESA, but defendant has failed and refused, and continues to fail and refuse, to do so. An actual controversy therefore exists between the parties within the meaning of 28 U.S.C. § 2201 (declaratory judgments).

7.     Venue lies properly in this judicial district by virtue of 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(b) and (c) because the violations are

occurring here, the causes of action arise here, real property involved in the action

is situated here, and defendant KIUC resides here.

## PARTIES

8.     Plaintiff Hui Hoʻomalu i Ka ʻĀina ("the Hui") is a "taro roots"

community-based organization founded by cultural practitioners in 1983 to restore,

protect and preserve Kauaʻi's natural and cultural resources.  Members of the Hui

include native Hawaiian practitioners, community leaders, educators, and other

Kauaʻi residents who are actively involved in efforts to protect Kauaʻi's unique

biological and cultural treasures – including the Newell's shearwater and Hawaiian

petrel – for future generations.

9.     Members of the Hui include native Hawaiian fishermen who seek to

perpetuate traditional fishing practices that rely on Newell's shearwaters and

Hawaiian petrels to locate schools of fish.  The Hui's members also participate in

efforts to rehabilitate shearwaters and petrels that have been retrieved by the Save

Our Shearwaters program and to educate Kauaʻi's school children regarding the

birds' cultural and biological significance.  Moreover, the Hui's members regularly

observe and study or seek to observe and study these species for recreational,

aesthetic and scientific purposes.

10.     To protect these cultural, subsistence, educational, recreational, aesthetic and scientific interests, Hoʻomalu i Ka ʻĀina brings this action on behalf of itself and its adversely affected members.

11.     Plaintiff Conservation Council for Hawaiʻi ("CCH") is a non-profit citizens' organization based in Hawaiʻi with approximately 5,500 members in Hawaiʻi, the United States mainland, and foreign countries.  CCH is a Hawaiʻi affiliate of the National Wildlife Federation, a non-profit membership organization with over 5.8 million members and supporters nationwide.

12.     CCH's mission is to protect native Hawaiian species, including threatened and endangered species, and to restore native Hawaiian ecosystems for future generations.  In this capacity, CCH and its members frequently testify at the state legislature on various bills relating to the protection of the environment, testify before administrative agencies on proposed regulations relating to species conservation, communicate with Hawaiʻi's congressional delegation and staff, review and comment on environmental impact statements, support scientific studies and research, engage in field work to survey Hawaiʻi's natural resources, participate in service projects to protect native species and ecosystems, prepare educational materials, including an annual wildlife poster featuring the native Hawaiian flora and fauna, and publish a periodic newsletter (Kolea, News from the Conservation Council for Hawaiʻi) discussing Hawaiian environmental issues. This year's wildlife poster, which CCH distributes free of charge to every public,

charter, private, and Native Hawaiian Language Immersion school in Hawai'i, features the Newell's shearwater.

13. With respect to Hawai'i's rare and endangered species, CCH and its members have worked to establish sanctuaries on each of the main Hawaiian Islands and have testified before the Hawai'i Natural Area Reserves System ("NARS") Commission and before the state legislature in support of the establishment of new NARS units. CCH and its members have worked for increased efforts to remove and exclude feral sheep, goats, deer, and pigs from biologically-important state lands, as those animals destroy threatened and endangered native vegetation. Similarly, CCH has worked for increased efforts to remove alien vegetation that competes with, and therefore endangers, native Hawaiian species and ecosystems.

14. CCH also persists in enforcing and upholding the ESA. For example, CCH has been a plaintiff in a number of lawsuits seeking to enforce the ESA, including suits seeking to compel designation of critical habitat for over two hundred threatened and endangered Hawaiian plant taxa, and to have native plants and animals listed under the ESA.

15. CCH members include wildlife biologists and others who have studied and enjoy native Hawaiian birdlife, including the Hawaiian petrel and Newell's shearwater. CCH members who live on the mainland visit the islands to

enjoy Hawai'i's native wildlife and natural areas.  CCH brings this action on behalf of itself and its adversely affected members and staff.

16.   Plaintiff Center for Biological Diversity (the "Center") is a non-profit corporation dedicated to preserving, protecting, and restoring biodiversity, native species, ecosystems, and public lands.  The Center has over 255,000 members and online activists, many of whom reside in the state of Hawai'i, and maintains offices throughout the western United States.  The Center's members and staff regularly spend time on Kaua'i for seabird observation, research, aesthetic enjoyment, and other recreational, scientific, and educational activities.  The Center's members and staff have researched, studied, visited, observed or attempted to observe, photographed or attempted to photograph, and sought protection for Newell's shearwaters and Hawaiian petrels on Kaua'i.  The Center's members and staff intend to continue to research, study, visit, observe, photograph and seek protection for these species in the future.  The Center's members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of these animals in the wild.  The Center brings this action on behalf of itself and its adversely affected members and staff.

17.   Plaintiff American Bird Conservancy ("ABC") is a non-profit corporation dedicated to the conservation of wild birds and their habitats throughout the Americas.  ABC is the only U.S.-based group with a major focus on bird habitat conservation throughout the entire Americas.  ABC acts across the full

6

spectrum of threats to birds to safeguard the rarest bird species, restore habitats, and reduce threats, unifying and strengthening the bird conservation movement. ABC advances bird conservation through direct action and by building partnerships of conservation groups, scientists, and members of the public to further the conservation and protection of birds in the Americas, using the best science available. ABC has approximately 8,000 members nationwide, including members residing in the Hawaiian Islands. Its members include conservationists, ornithologists, bird conservation organizations, and birders, among others. ABC's Bird Conservation Alliance draws together a broad spectrum of people and organizations interested in, and working on, policy issues affecting bird conservation to implement collaborative strategies promoting bird conservation. Currently, there are over 200 member organizations in its Bird Conservation Alliance representing millions of people living throughout the United States who support bird conservation.

18.    ABC has a demonstrated commitment to upholding the ESA. ABC has petitioned the US Fish and Wildlife Service and participated in litigation to list species under the ESA, including the recently listed 'Akikiki and 'Akeke'e of Kaua'i.

19.    ABC is directly involved in efforts to conserve Hawaiian birds. In addition to projects currently underway on Kaua'i, Maui, and Hawai'i Island, ABC has worked on issues such as the impacts of feral and free-ranging cats, bycatch of

seabirds in fisheries in Hawai'i, and the impacts of lead-based paint on Laysan Albatrosses on Midway. In addition, ABC is active in Washington, D.C., working with agencies and lawmakers to increase funding available for the conservation of Hawaiian birds. ABC is engaged in efforts to increase the awareness among the American public about Hawaiian birds through its magazine and newsletter, special reports, such as the State of the Birds report, and regular outreach to press.

20.     ABC has demonstrated commitment to the protection of Kaua'i's imperiled birds, including the Newell's shearwater and Hawaiian petrel. ABC has participated in litigation to force constructors of communications towers to consult under the ESA over potential take of Newell's Shearwaters and Hawaiian Petrels. In addition, ABC is currently developing projects to protect Newell's Shearwaters and Hawaiian Petrels from predation by feral cats on Kaua'i and Hawai'i Island.

21.     Defendant's operations harm ABC and its members who conduct research, conservation projects, monitor and observe birds on Kaua'i and have a particular interest in observing and protecting the threatened Newell's shearwater and the endangered Hawaiian petrel. ABC brings this action on behalf of itself and its adversely affected members and staff.

22.     The above-described cultural, aesthetic, conservational, recreational, subsistence, scientific, and educational interests of the four plaintiff groups and their respective members, have been, are being, and, unless the relief prayed herein is granted, will continue to be adversely affected and irreparably injured by the

defendant's continued refusal to comply with its obligations under the ESA, as is more fully set forth below. The individual interests of the plaintiffs' members as well as their organizational interests are thus directly and adversely affected by defendant's unlawful actions.

23.   Defendant Kaua'i Island Utility Cooperative is a not-for-profit, tax-exempt cooperative association that produces, purchases, transmits, distributes, and sells electricity on the island of Kaua'i. KIUC was formed to purchase and operate the assets of the previous owner, Kauai Electric and completed the purchase of KE's assets in November 2002.

24.   KIUC owns and operates a variety of electric utility installations on Kaua'i, including fossil-fuel-fired generating stations at Port Allen and Līhu'e, the upper and lower Waiaihi hydroelectric stations within the Wailua watershed, seven electrical substations and five switchyards located throughout the island, approximately 160 miles of electrical transmission lines, approximately 560 miles of 12.5 kV electrical distribution lines, and approximately 425 miles of secondary lines that carry power from step-down transformers that are part of the distribution network to individual homes and businesses.

25.   KIUC also owns and operates approximately 3,100 streetlights on behalf of the County of Kaua'i, the State of Hawai'i, and private entities, representing most of the streetlights on the island.

## LEGAL FRAMEWORK

26.     "[T]he Endangered Species Act of 1973 represented the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." Tennessee Valley Authority v. Hill, 437 U.S. 153, 180 (1978).  In furtherance of the Congress' goal to conserve species, the ESA generally prohibits the "take" of any species listed as endangered or threatened.  16 U.S.C. § 1538(a)(1)(B).  By regulation, the U.S. Fish and Wildlife Service has extended the prohibition on take to threatened species, including the Newell's shearwater.  16 U.S.C. § 1533(d); 50 C.F.R. § 17.31.

27.     The ESA's prohibition on "take" includes actions that "harass," "harm" and "kill" protected species.  16 U.S.C. § 1532(19).  The ESA's regulations define "harass" as "an intentional or negligent act or omission which creates the likelihood of injury to wildlife by annoying it to such an extent as to significantly disrupt normal behavioral patterns which include, but are not limited to, breeding, feeding, or sheltering."  50 C.F.R. § 17.3.  "Harm" is defined as "an act which actually kills or injures wildlife."  Id.

28.     To comply with the ESA, defendant may not "take" any threatened Newell's shearwater or endangered Hawaiian petrel in the course of its operations on Kaua'i unless it first obtains and complies with the terms of an incidental take permit in accordance with ESA section 10(a), 16 U.S.C. § 1539(a).

## BACKGROUND FACTS

29.     Defendant's electrical transmission and distribution system is largely above ground and consists of poles and wires that extend from twenty-five to more than one hundred feet above ground.  The overhead wires occupy airspace through which birds fly, and numerous collisions between birds and these facilities have been documented.

30.     The operation and maintenance of defendant's power lines, other utility facilities and streetlights current "take" a total of nearly two hundred (200) Newell's shearwaters and Hawaiian petrels each year.

31.     In 2009, defendant estimated that, each year, its power lines kill approximately eighty-seven (87) Newell's shearwaters, of which approximately seventeen (17) are breeding adults.

32.     Because Newell's shearwater chicks require parental care from both adults until very near fledging, the loss of each breeding adult due to a power line collision likely results in the death of one chick.  Accordingly, defendant has estimated that, each year, an additional seventeen (17) Newell's shearwater chicks die as a result of one of their parents being killed by a collision with defendant's power lines.  The deaths of these shearwaters chicks constitute "indirect" take for which defendant is also responsible under the ESA.

33.     In addition to deaths associated with power line collisions, the streetlights that defendant owns and operates attract and/or disorient fledging

Newell's shearwaters and Hawaiian petrels making their first flights to the sea. The birds that become disoriented by these lights often exhaust themselves by flying around the lighted areas until they collapse to the ground.  Other birds collide with obstacles such as power lines, utility poles, buildings, and other tall structures.

34.     Once Newell's shearwaters and Hawaiian petrels are grounded by light attraction, they have very limited ability to resume flight from flat surfaces. Thus, once on the ground, they are highly subject to predation by dogs, cats and other mammals, as well as to injury and death by vehicles, other human activity, or due to dehydration or starvation.

35.     In 2009, defendant estimated that, each year, its streetlights kill approximately eighteen (18) fledging Newell's shearwaters, with another approximately fifty-four (54) fledging Newell's shearwaters "downed" by light attraction.

36.     All of the above-described Newell's shearwaters, whether killed, injured or downed by defendant's operations, have been "taken" within the meaning of the ESA.

37.     In 2009, defendant estimated that, each year, its operations "take" two endangered Hawaiian petrels.

38.     When defendant purchased KE's assets in 2002, it was fully aware that operation and maintenance of the utility's facilities causes unpermitted take in

violation of the ESA.  It was also aware of common-sense measures that are

needed to minimize the number of listed seabirds utility facilities kill and injure,

which were spelled out in a 1995 study funded by its predecessor, KE, and carried

out by the Electric Power Research Institute ("EPRI").  Defendant has

acknowledged that the EPRI study provides "the best scientific and commercial

data available" regarding its take of Newell's shearwaters and Hawaiian petrels.

39.     Unfortunately, following its purchase of KE's assets, defendant failed

promptly to bring its operations into compliance with the ESA.

40.     Despite knowing it lacked incidental take coverage, defendant has

failed to take the steps it knows are necessary to eliminate all potential for "take"

of listed seabirds associated with its facilities and operations.  Such steps include,

but are not limited to, undergrounding its overhead utility lines and eliminating its

street lighting.

41.     Moreover, despite years of promises that it would come into

compliance with the ESA, defendant has yet to secure incidental take permit

coverage and implement the measures that are needed to protect Kaua'i's imperiled

seabirds from injury and death and to mitigate any unavoidable take.

42.     In the absence of either a valid incidental take permit or

implementation of measures to eliminate "take" of listed seabirds, defendant has

been violating, and continues to violate the ESA.

13

CLAIM FOR RELIEF
(VIOLATION OF PROHIBITION ON UNAUTHORIZED TAKE)

43.   Plaintiffs reallege and incorporate by this reference paragraphs 1-42 of this Complaint.

44.   Each year, the power lines, other utility facilities, and streetlights on Kaua'i that defendant owns and operates "take" threatened Newell's shearwaters and/or endangered Hawaiian petrels, without incidental take permit coverage.  This unauthorized "take" has violated and is violating the ESA.  16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.31.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the Court:

1.   Enter a declaratory judgment that defendant has violated and is violating the Endangered Species Act by taking listed species without incidental take authorization;

2.   Issue appropriate injunctive relief;

3.   Award plaintiffs the costs of this litigation, including a reasonable attorney's fee; and

4.   Provide such other relief as may be just and proper.

\\

\\

\\

DATED:      Honolulu, Hawai'i, March 24, 2010.

                              Respectfully submitted,


                              _____
                              PAUL H. ACHITOFF
                              DAVID L. HENKIN
                              Earthjustice
                              223 S. King Street, Suite 400
                              Honolulu, HI 96813
                              Attorneys for Plaintiffs

15