IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HUI HOʻOMALU I KAʻAINA; CONSERVATION COUNSEL FOR HAWAIʻI; CENTER FOR BIOLOGICAL DIVERSITY; and AMERICAN BIRD CONSERVANCY, | ) ) ) ) ) Civ. No. 10-00169 ACK-LEK |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| KAUAʻI ISLAND UTILITY COOPERATIVE, | ) ) ) |
| Defendant. | ) ) ) |

## ORDER REVERSING IN PART AND AFFIRMING IN PART THE MAGISTRATE JUDGE'S ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY

### BACKGROUND[1/]

Before the Court is Defendant Kauaʻi Island Utility Cooperative's ("Defendant" or "KIUC") Appeal of the Magistrate Judge's Order Granting in Part and Denying in Part Defendant's Motion to Stay ("7/30/10 Order"), filed on August 13, 2010.  Doc. No. 40.  Defendant filed a memorandum in support of its appeal ("Defendant's Appeal") as well as a notice of service of the appellate record ("Appellate Record"), which contains pleadings relevant to Defendant's Appeal.  On August 30, 2010, Plaintiffs

---

[1/] The facts in this Order are recited for the limited purpose of deciding Defendant's Appeal and shall not be construed as findings of fact upon which the parties may rely in future proceedings in this case.

filed an opposition to Defendant's Appeal.  Doc. No. 42.

**I.   This Action**

On March 24, 2010, Plaintiffs filed a complaint for declaratory and injunctive relief against KIUC.  KIUC is the electrical utility serving the island of Kaua'i.  KIUC is a not-for-profit cooperative that is owned by its approximately 30,000 ratepayers.  Defendant's Appeal at 3.  KIUC took over utility operations on Kaua'i in 2002 from the prior, for-profit owner (Kaua'i Electric), and now generates and distributes electricity on the island of Kaua'i.  Id.  In addition, KIUC owns and operates most of the streetlights on the island.  Id.

Plaintiffs allege that the population of the Newell's shearwaters (Puffinus auricularis newelli) on Kaua'i is precipitously declining.  Compl. ¶ 1.  Plaintiffs allege that the Newell's shearwater population has declined over seventy-five percent (75%) in the fifteen (15) years from 1993-2008.  Id. Plaintiffs allege that the illegal operations of Defendant and its predecessor bear substantial responsibility for that precipitous decline as power lines, other utility structures, and utility-owned and operated streetlights have killed and injured many thousands of shearwaters.  Id.

In 1975, the Newell's shearwater was listed as a threatened species pursuant to the Endangered Species Act, 16 U.S.C. §§ 1531 et seq.  Id.  Plaintiffs also assert that

2

Defendant's operations kill and injure Hawaiian petrels
(<u>Pterodropa</u> <u>sandwichensis</u>), which were listed as an endangered
species in 1967.  <u>Id.</u> ¶ 2.

Plaintiffs seek an order compelling Defendant's
compliance with the Endangered Species Act.  <u>Id.</u> ¶ 3.
Specifically, Plaintiffs seek a declaration that, in the absence
of a lawful incidental take permit, Defendant's activities
violate the Endangered Species Act's prohibition on unpermitted
"take" of federally listed species.  <u>Id.</u>  Thus, Plaintiffs seek
injunctive relief, including, "but not limited to, undergrounding
[of Defendant's] overhead utility lines and eliminating street
lighting" to protect Newell's shearwaters and Hawaiian petrels
from further harm.  <u>Id.</u>, <u>id.</u> ¶ 40.

## II.  Other Actions

Defendant is also a defendant in a criminal lawsuit in
this district, <u>United States v. Kaua'i Island Utility Co-op</u>, Cr.
No. 10-00296 JMS.  The criminal indictment also relates to the
Newell's shearwaters and charges Defendant with nineteen counts
of unlawfully taking a threatened species without a permit to do
so in violation of the Endangered Species Act.  <u>See</u> Indictment ¶¶
8-15, counts 1-19.  The criminal trial is currently scheduled for
December 7, 2010. <u>See</u> Cr. No. 10-00296 JMS Doc. No. 25.

Additionally, Defendant is working on a Habitat
Conservation Plan ("HCP") with federal and state regulators,

which when completed and approved, would result in the issuance
of an Endangered Species Act permit authorizing the "incidental"
take of protected seabirds in exchange for Defendant implementing
numerous specific measures to avoid, minimize, and mitigate
impacts on the protected species.  Defendant's Appeal at 1-2.

        Defendant began working on an HCP in 2002, pursuant to
a memorandum of agreement ("MOA") that was signed with the United
States Fish & Wildlife Service ("USFWS").  See Plaintiffs'
Memorandum in Opposition to the Motion to Stay, Decl. of David L.
Henkin ("Henkin Decl."), Ex. C (Doc. No. 30-4).  The memorandum
of agreement required KIUC to obtain an incidental take permit by
May 1, 2004; however, KIUC did not submit a final HCP and
application for associated incidental take permit until 2007.
See Defendant's Appeal at 5.  In January 2008, the USFWS informed
KIUC that it had identified a number of issues in the
application, which needed to be addressed before moving on to the
next steps.  See Henkin Decl. Ex. D. (Doc. 30-5).  In December
2008, the USFWS and the Hawai'i Department of Land and Natural
Resources Division of Forestry and Wildlife ("DOFAW") jointly
requested that KIUC substantially revise the HCP and also that it
seek a short-term take permit rather than the original fifty year
permit for which it had applied.  Defendant's Appeal at 5.  KIUC
submitted a new HCP and incidental take permit application in
mid-2009.  Defendant's Appeal at 6.  On September 9, 2009, the

USFWS informed KIUC that, among other issues, the proposed mitigation would not fully mitigate the anticipated takings.  <u>See</u> Plaintiffs' Opposition at 8 (citing Doc. No. 19-3, the Indictment ¶ 48).  KIUC worked with both agencies to make changes and submitted a further revised HCP document to both agencies on August 9, 2010.  Defendant's Appeal at 6.

Concurrently with developing the HCP, KIUC has implemented numerous measures to minimize its potential impacts and to benefit the protected seabirds.  <u>Id.</u>  Such measures include funding the annual Save Our Shearwaters (SOS) program, which retrieves downed birds and releases them back to the wild, as well as shielding all of the streetlights to direct light away from the sky (in accordance with regulatory guidelines) and adjusting lighting at electrical generation facilities.  <u>Id.</u> at 6-7.

## **STANDARD OF REVIEW**

Pursuant to Local Rule 74.1, any party may appeal from a magistrate judge's order determining a non-dispositive pretrial matter or, if a reconsideration order has issued, the magistrate judge's reconsideration order on such a matter.  The district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  <u>See</u> Local Rule 74.1; <u>see</u> <u>also</u> 28 U.S.C. § 626(b)(1)(A); Fed. R. Civ. P. 72(a).  The district judge may also

reconsider <u>sua</u> <u>sponte</u> any matter determined by a magistrate judge.  <u>See</u> Local Rule 74.1.

"The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo."  <u>Columbia Pictures, Inc. v. Bunnell</u>, 245 F.R.D. 443, 446 (C.D. Cal. 2007).  Under the "clearly erroneous" standard, the magistrate judge's ruling must be accepted unless, after reviewing the entire record, this Court is "left with the definite and firm conviction that a mistake has been committed."  <u>United States v. Silverman</u>, 861 F.2d 571, 576-77 (9th Cir. 1998) (citing <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).  The district judge may not simply substitute his or her judgment for that of the magistrate judge.  <u>See</u> <u>Grimes v. City and County of San Francisco</u>, 951 F.2d 236, 241 (9th Cir. 1991).  "'A decision is contrary to law if it applies an incorrect legal standard or fails to consider an element of the applicable standard.'"  <u>Na Pali Haweo Cmty. Ass'n v. Grande</u>, 252 F.R.D. 672, 674 (D. Haw. 2008).

Motions to stay are non-dispositive motions and thus are reviewed under the clearly erroneous and contrary to law standard of review.  <u>Sylvester v. Menu Foods, Inc.</u>, Civ. No. 07-00409 ACK-KSC, 2007 WL 4291024, *2 (D. Haw. Dec. 05, 2007) (citing <u>Torrance v. Aames Funding Corp.</u>, 242 F. Supp. 2d 862, 864

(D. Or. 2002)); <u>see also</u> <u>McClelland v. Merck & Co.</u>, Civ. No. 06-00543 JMS-BMK, 2007 WL 178293, *2 (D. Haw. Jan. 19, 2007).

<u>**DISCUSSION**</u>

**I.   The 7/30/10 Order**

On July 30, 2010, Magistrate Judge Kobayashi issued the instant order from which Defendant appeals.  In the 7/30/10 Order, Judge Kobayashi explained:

> Absent a showing of substantial prejudice to the rights of the parties involved, the Fifth Amendment privilege against self-incrimination does not require a stay of civil proceedings pending the outcome of criminal proceedings.  <u>See</u> <u>Keating v. Office of Thrift Supervision</u>, 45 F.3d 322, 324 (9th Cir. 1995).  In determining whether a stay is appropriate, the court should consider various factors in the context of the particular circumstances and interests involved in the case.  These factors include:
> > (1) the extent to which the defendant's Fifth Amendment rights are implicated, (2) the interest of the plaintiffs in proceeding expeditiously, (3) the burden the proceedings may impose on the defendants, (4) the convenience of the court and the efficient use of judicial resources, (5) the interests of persons not parties to the civil litigation, and (6) the interest of the public in the pending civil and criminal litigation.
>
> <u>S.E.C. v. Global Express Capital Real Estate Inv. Fund, I, LLC</u>, 289 Fed. Appx. 183, 191 (9th Cir. 2008) (citing <u>Fed. Sav. & Loan Ins. Corp. v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989)).

7/30/10 Order at 14 (footnote omitted).  In analyzing these factors (referred to as the <u>Keating</u> factors), Judge Kobayashi found that the first and third factors weighed slightly in favor of granting a stay, the second factor weighed strongly against a

stay, and the fourth, fifth, and sixth factors were all neutral. Id. at 15-16.  Based upon her analysis of all of the factors, Judge Kobayashi concluded that a complete stay of this action was not warranted.  Id. at 16-17.  Therefore, she granted Defendant's motion to stay insofar as the trial date and certain pretrial deadlines were vacated, but denied the motion to stay insofar as she permitted discovery to continue.  Id.

## II.  The Parties' Arguments on Appeal

### A.  Defendant's Arguments

Defendant appeals the portion of the 7/30/10 Order allowing discovery to commence without limitation prior to the December 7, 2010, criminal trial.  Defendant requests the Court temporarily stay discovery for four months, until the end of December 2010.  Defendant's Appeal at 17.  In the alternative, Defendant requests that the Court restrict pre-December 2010 discovery to only those requests necessary for Plaintiffs' planned motion for a preliminary injunction.  Id.

Defendant argues that the 7/30/10 Order erred in its analysis of the Keating factors.  Defendant agrees with the 7/30/10 Order's recognition of the prejudice that a corporate defendant faces when a pending criminal case deprives it of the ability to mount a full defense in a related civil case.  See Defendant's Appeal at 10.  Defendant, however, strongly disagrees with the 7/30/10 Order's conclusion regarding the second Keating

8

factor, which focuses on a plaintiff's interest in proceeding
expeditiously.  Id. at 11.  Defendant argues that

> Plaintiffs waited as many as 35 years to seek an
> injunction against the alleged harm caused by
> electrical utility operations on Kaua'i.  (At a minimum
> the delay was 15 years, based on the 1995 study cited
> by Plaintiffs in their Complaint.)  Having waited for
> decades to seek an injunction, Plaintiffs cannot now
> argue that waiting a mere four additional months would
> deny them some right of expeditious resolution.

Id. (emphasis in original).  Defendant further argues that
Plaintiffs' asserted intention of filing a motion for a
preliminary injunction does not alter the analysis.  Defendant
contends that Plaintiffs' conduct is inconsistent with
Plaintiffs' claim that they need immediate discovery to secure a
preliminary injunction.  Id.  Defendant argues that Plaintiffs
had never expressed an intention to seek a preliminary injunction
prior to the July 20, 2010, hearing on the motion to stay before
Judge Kobayashi and Plaintiffs never sought an expedited hearing
on the motion to stay.  Id.  Defendant further asserts that the
"decades-long pre-filing delay by Plaintiffs also justifies the
application of the doctrine of laches, regardless of any judicial
concerns about applying the doctrine in environmental cases."
Id. at 12.

Defendant also argues that the 7/30/10 Order's analysis
of other Keating factors was in error.  Defendant asserts that
the fourth factor, regarding efficient use of judicial resources,
weighs in favor of a stay.  Id. at 13.  Defendant argues that

9

"the criminal case will cover the same issues that Plaintiffs claim as the basis for their lawsuit, and resolution of the criminal case could involve mitigation measures similar to those demanded by the [Plaintiffs]."  Id.  Defendant further argues that the Plaintiffs' discovery requests confirm the substantial overlap between the civil and criminal cases, as Plaintiffs' requests seek all documents related to specific takings of seabirds that are alleged in the Indictment.  Id.

Defendant additionally argues that the fifth and sixth factor weigh in favor of a stay because the criminal case and the administrative process more directly address the concerns that Plaintiffs purport to represent.  Id. at 14.  Defendant asserts that the 7/30/10 Order failed to address its arguments that this action should be stayed pending resolution of the regulatory action.  Id. at 15-16.  Defendant argues that "when regulators with expertise in the disputed environmental area are simultaneously considering an issue, the courts should defer to that expertise."  Id. at 16.

B.  Plaintiffs' Arguments

In opposition, Plaintiffs argue that the Court should consider Judge Kobayashi's analysis of the Keating factors as factual findings, which Plaintiffs assert are not clearly erroneous.  Opposition at 1-2.  Plaintiffs argue that analysis of the second Keating factor was correct because Defendant conceded

10

that there is an important environmental interest at stake and, in its moving papers, Defendant had acknowledged that this factor may favor Plaintiffs. <u>See</u> <u>id.</u> at 9. Plaintiffs also argue that the procedural history of the case "belies defendant's claim that [Plaintiffs] 'sat on [their] hands' in pursuing discovery." <u>Id.</u> at 10. Plaintiffs argue that they have expeditiously sought discovery in this case. <u>Id.</u> at 11. Plaintiffs assert that the Court should refuse to entertain Defendant's argument that the doctrine of laches is applicable because that issue was not raised before Magistrate Judge Kobayashi and, in any event, the Court should decline to apply the laches doctrine, which is "strongly disfavored in environmental cases." <u>Id.</u> at 12. Plaintiffs also argue that "[w]hile defendant may disagree with Judge Kobayashi's conclusions regarding the other <u>Keating</u> factors, mere disagreement does not establish that her findings were 'clearly erroneous,' the highly deferential standard that applies here." <u>Id.</u> at 14.

Plaintiffs also assert that this Court should reject Defendant's argument that the ongoing administrative process to obtain an incidental take permit warrants a stay and that this case does not involve application of the doctrine of primary jurisdiction. <u>Id.</u> at 18.

**III. Analysis**

The Court reviews the six <u>Keating</u> factors, which

11

are:

> 1) the extent to which the defendant's Fifth
> Amendment rights are implicated, (2) the interest of
> the plaintiffs in proceeding expeditiously, (3) the
> burden the proceedings may impose on the defendants,
> (4) the convenience of the court and the efficient use
> of judicial resources, (5) the interests of persons not
> parties to the civil litigation, and (6) the interest
> of the public in the pending civil and criminal
> litigation.

S.E.C. v. Global Express Capital Real Estate Inv. Fund, I, LLC,

289 Fed. Appx. 183, 191 (9th Cir. 2008) (citing Keating, 45 F.3d

at 324-25, Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899,

902 (9th Cir. 1989)).

In considering the extent to which a defendant's Fifth

Amendment rights are implicated, the court examines whether the

civil and criminal proceedings involve the same or closely

related facts.  See McCormick v. Rexroth, Civ. No. 09-4188 JF,

2010 WL 934242, *2 (N.D. Cal. Mar. 15, 2010).  "Some courts have

gone so far as to recognize the extent of the overlap as the

'most important factor.'"  See id.  Thus, where both actions

arise from the same nucleus of fact, the Fifth Amendment is

likely implicated and this factor will favor a stay.  Id.  As one

court explained, "the strongest case for deferring civil

proceedings until after completion of criminal proceedings is

where a party under indictment for a serious offense is required

to defend a civil or administrative action involving the same

matter."  Taylor, Bean & Whitaker Mortgage Corp. v. Triduanum

12

Financial, Inc., Civ. No. 2:09-0954 FCD-EFB, 2009 WL 2136986, *2 (E.D. Cal. July 15, 2009) (citing Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1375-76 (D.C. Cir. 1980)).

The Court agrees with the 7/30/10 Order that the first factor favors a stay; however, the Court finds that it was clearly erroneous to find that it only "slightly" favors a stay. See 7/30/10 Order at 15. KIUC acknowledges that it does not have Fifth Amendment rights against self-incrimination. See 7/30/10 Order at 15 (citing United States v. Nobles, 422 U.S. 225, 233 (1975) ("the Fifth Amendment privilege against compulsory self-incrimination is an intimate and personal one, which protects a private inner sanctum of individual feeling and thought. . . .") (citation and quotation marks omitted)). However, as the 7/30/10 Order explained, "many of KIUC's officers and employees who have been questioned in this case have expressed their intention to invoke their Fifth Amendment rights." 7/30/10 Order at 15. Because KIUC can only defend itself through the testimony of its officers and employees, if they invoke their Fifth Amendment right not to testify, KIUC's ability to defend itself will be substantially prejudiced. See 7/30/10 Order at 6. Consequently, in light of the criminal trial set for December 7, 2010, the Court finds that this factor strongly favors a stay.

Turning to the second factor ("the interest of the plaintiffs in proceeding expeditiously"), the Court concludes

13

that this factor does not weigh as strongly against a stay of
general discovery as the 7/30/10 Order found; but does not find
that the Magistrate Judge's ruling on this factor was clearly
erroneous.  See 7/30/10 Order at 15-16.  Based upon the 1995
study cited by Plaintiffs in their Complaint, Plaintiffs have
waited 15 years to bring this lawsuit and at least eight years
since KIUC took over Kauai Electric's operations.  See Compl. ¶¶
24, 38.  During that time, according to the Defendant, the
ratepayers on Kaua'i have spent millions of dollars maintaining
overhead electrical lines and have spent hundreds of thousands of
dollars retrofitting streetlights, which Plaintiffs now claim are
inadequate.  Defendant's Appeal at 12.

        Furthermore, Plaintiffs only sought discovery after
Defendant had filed its motion to stay.  See Doc. No. 19 (Motion
to Stay, filed May 28, 2010); Doc. No. 33-3 (Plaintiffs' First
Set of Requests for Production of Documents and Things, dated
June 3, 2010).  Plaintiffs also had not raised the prospect of a
preliminary injunction until directly asked by Judge Kobayashi at
the hearing on the motion to stay on July 20, 2010.  See Doc. No.
38 at 13:15-14:12.  However, even in their response to Judge
Kobayashi, Plaintiffs did not indicate that they definitely
intended to seek a preliminary injunction but only that they
wanted "to have the opportunity" to do so.  Id. at 1:7-12.  Nor
had Plaintiffs sought to have an expedited hearing on the motion

to stay or to have an expedited review of Defendant's Appeal.
Accordingly, the Court finds that while Plaintiffs do have an
interest in proceeding expeditiously, it does not weigh as
strongly against a stay as the 7/30/10 Order concludes
(nevertheless, as stated above, the Court finds that the 7/30/10
Order's conclusion regarding this factor is not clearly
erroneous).[2]

     The Court also concludes that the Magistrate Judge's
findings regarding the third and fourth factors were clearly
erroneous.  <u>See</u> 7/30/10 Order at 16.  Based upon its review, the
Court concludes that the third factor ("the burden the
proceedings may impose on the defendants") and fourth factor
("the convenience of the court and the efficient use of judicial
resources") strongly favor a stay.  As Defendant argues, the
criminal case will cover the same issues that predominately form
the basis for Plaintiffs' lawsuit and resolution of the criminal
case could involve mitigation measures similar to those demanded
by Plaintiffs.  <u>See</u> Defendant's Appeal at 13.  The criminal case
is scheduled for trial on December 7, 2010, and should be
completed by the end of this year.  Allowing unlimited discovery

---

     [2] The Court will not address the parties' arguments
regarding the laches doctrine or its problematic application in
environmental cases, because Defendant did not raise this
argument before the Magistrate Judge.  And, in any event, as
discussed <u>infra</u>, the Court finds that an analysis of the <u>Keating</u>
factors weighs in favor of a stay (although the Court will allow
limited discovery as specified hereinafter).

at this time with the pending trial in the criminal case would be unduly burdensome upon Defendant.

Similarly, the regulatory proceedings involving Defendant also support a stay, and the Court finds that it was clearly erroneous for the Magistrate Judge to not consider the regulatory proceedings.  See 7/30/10 Order at 14 n.3 (explaining that the "Court recognizes that KIUC also seeks a stay in light of the ongoing administrative process to obtain an incidental take permit" but declining to address that argument "insofar as this Court finds that KIUC has a greater interest in a stay in light of the pending criminal proceedings against it.")

Defendant asserts that when an administrative agency is investigating and weighing the sufficiency of an applicant's compliance with environmental regulations, courts have stayed civil cases pursuant to the doctrine of primary jurisdiction. See Defendant's Appeal at 15-16 (Section C "[t]he Order's Failure to Address the Implications of the HCP Process, And the Doctrine of Primary Jurisdiction, Was In Error); see also Defendant's Motion to Stay at 12 (Doc. No. 19-1) (citing Ctr. for Biological Diversity v. U.S. Dep't of Interior, 255 F. Supp. 2d 1030, 1039 (D. Ariz. 2003); Ctr. for Biological Diversity v. Henson, Civ. No. 08-946-TC, 2009 U.S. Dist. Lexis 55709 (D. Or. June 30, 2009)).  Plaintiffs, in contrast, argue that the doctrine of primary jurisdiction is not applicable to this case and that the

16

doctrine "comes into play only when 'enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'"   Plaintiff's Opposition at 18.   However, in both cases cited by Defendant, where proceedings were stayed in light of pending action by an administrative body; they were stayed pursuant to the court's inherent authority, not the doctrine of primary jurisdiction.   See Ctr. for Biological Diversity v. U.S. Dep't of Interior, 255 F. Supp. 2d at 1036 ("The Court has inherent discretionary authority to stay the case. . . . Alternatively, the Court may stay the action pursuant to the doctrine of primary jurisdiction"); Ctr. for Biological Diversity v. Henson, 2009 U.S. Dist. Lexis 55709 at *4 ("A district court has the inherent power to stay its proceedings.") Accordingly, the Court finds it is not necessary to address the applicability of the doctrine of primary jurisdiction.

The Court finds that the agency review process here weighs in favor of a stay pursuant to the Court's inherent discretionary authority.   Defendant began the regulatory process at least two years before this case was brought (as early as 2007), when it filed a final application for an incidental take permit.   The regulatory process regarding a permit for Defendant's incidental take is progressing and could be completed

17

as early as the end of 2010.  <u>See</u> Defendant's Appeal at 6.[3/]  If
the regulatory process is completed and Defendant secures an
incidental take permit, Plaintiffs' case would be mooted.  Thus,
both the burden on defendant and judicial economy and efficiency,
strongly favor a stay.

        The Court agrees with the 7/30/10 Order that the fifth
factor ("the interests of persons not parties to the civil
litigation") and sixth factor ("the interest of the public in the
pending civil and criminal litigation") are neutral.  As
Magistrate Judge Kobayashi explained, "[t]here is a strong public
policy favoring the protection of endangered species.  The Court,
however, must also consider the fact that KIUC's operations play
a vital role in the health, safety, and orderly functioning of
the Kaua'i community."  7/30/10 Order at 16.

        In sum, the Court concludes that the 7/30/10 Order,
while applying the <u>Keating</u> factors, was clearly erroneous in its

---

        [3/] In support of this argument, Defendant cites Docket Nos.
33-4 (Koide Decl.) ¶ 5, 33-6 (Ex. 2); and Cr. No. 10-00296,
Docket No. 21-1 (Declaration of USFWS Special Agent Paul Chang) ¶
10.  Plaintiffs take issue with Defendant's citation to the
declaration of Special Agent Chang.  <u>See</u> Opposition at 8 n. 3.
The Court considers the declarations and recognizes the
limitations of these declarations in that both only state the
regulatory proceedings may conclude by December, but neither is
able to affirmatively declare that such proceedings will
conclude.  However, in the interest of judicial efficiency, in
conjunction with the criminal case, the Court concludes that the
possibility the regulatory proceedings may be resolved in the
Defendant's favor in the very near future, thus rendering the
current proceeding moot, warrants a stay.

factual findings as to certain of those factors, and thus, its conclusions of law based upon those factual findings are erroneous.  To review, the Court finds that the first factor ("the extent to which the defendant's Fifth Amendment rights are implicated"), the third factor ("the burden the proceedings may impose on the defendant"), and the fourth factor ("the convenience of the court and the efficient use of judicial resources") all weigh strongly in favor of a stay and that the factual findings in the 7/30/10 Order as to those three factors were clearly erroneous; while, as the 7/30/10 Order found, the fifth factor ("the interests of persons not parties to the civil litigation") and the sixth factor ("the interest of the public in the pending civil and criminal litigation") are neutral and the second factor ("the interest of the plaintiffs in proceeding expeditiously") weighs strongly against a stay.  Based upon the foregoing, this Court concludes that a stay of most discovery is warranted.  Therefore, the Court reverses the 7/30/10 Order to the extent that it allowed unlimited discovery, and, as explained in greater detail below, the Court will allow only limited discovery related to Plaintiffs' proposed preliminary injunction motion.

Because of the public interest in protecting endangered species, the Court will permit limited discovery that is relevant to the Plaintiffs' proposed preliminary injunction motion seeking

immediate remedial action regarding streetlights which are
located in "hot spots."  The Court finds that this limited
discovery should not implicate the Fifth Amendment rights of
Defendant's personnel such that Defendant will be substantially
prejudiced.  In addition, this limited discovery should not
overly burden the Defendant while Defendant is preparing for the
criminal trial, nor should it burden the court or its efficient
use of judicial resources; nor should it significantly interfere
with the ongoing agency review process.  The Court rules that
this discovery is limited, as discussed <u>infra</u>, to the discovery
that Plaintiffs represented to the Magistrate Judge that they
needed for their proposed preliminary injunction motion.  At the
Hearing before Magistrate Judge Kobayashi, the Plaintiffs
acknowledged that they would not be seeking any preliminary
injunctive relief regarding the power lines.  <u>See</u> Hearing Tr. at
13:15-25 (Doc. No. 38).  Rather, Plaintiffs are focused on
streetlights, which they have estimated kill and injure dozens of
Newell's shearwaters during the fallout season, which runs from
the middle of September to the middle of December.  <u>Id.</u>
Plaintiffs indicated that they hoped "to proceed expeditiously
with discovery so [they] could present to the court information
about which of these streetlights are in hot spots and which of
these streetlights, even as a preliminary matter, might need to
be modified or adjusted in order to avoid irreparable harm to

federally protected species." Id. at 14:1-6.

Defendant argues that the 7/30/10 order was "in error because there is no relationship between Plaintiffs' discovery demands and their planned motion for preliminary injunction." Defendant's Appeal at 14.  The Court rejects this argument.  As Plaintiffs argue, to obtain a preliminary injunction, they must demonstrate, inter alia, success on the merits.  To do so, they must establish that Defendant's streetlights in "hot spot" locations kill, injure, or otherwise take listed seabirds, for which Defendant lacks an incidental take permit.  See Plaintiffs' Opposition at 16.

Having reviewed Plaintiffs' First Set of Requests for Production of Documents and Things (Doc. No. 33-2), the Court agrees in part with Plaintiffs.  Some of Plaintiffs' requests do indeed appear to be relevant to the proposed preliminary injunction motion.  However, some requests go beyond the information that would be needed for the proposed preliminary injunction.  For example, because Plaintiffs have indicated that the proposed preliminary injunction would focus on "hot spots" caused by streetlights, discovery related to power lines and other facilities appears unrelated to the proposed preliminary injunction motion.  Accordingly, the Court directs the parties to confer on whether they can reach agreement on the scope of discovery that Plaintiffs need for their proposed preliminary

21

injunction motion.  If the parties are unable to agree, then Plaintiffs may file a motion before the Magistrate Judge to determine the scope of discovery that they are entitled to at this point consistent with this Order.  Given that the 2010 fledgling season has already begun, the Court directs the parties to work as quickly and cooperatively as possible.

## CONCLUSION

          For the foregoing reasons, the Magistrate Judge's Order Granting In Part and Denying in Part Defendant's Motion to Stay is hereby affirmed in part and reversed in part.  All pretrial deadlines and trial deadlines shall remain vacated as ordered by Judge Kobayashi.  In addition, general discovery in this case is stayed; however, as discussed above, the Plaintiffs may seek limited discovery relating to their proposed preliminary injunction motion.  The parties also are directed to set up a status conference for January 2011 to discuss proceeding with general discovery in the case at that date.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, September 24, 2010.



                    _____
                    Alan C. Kay
                    Sr. United States District Judge


Hui Ho'omalu I Ka'aina v. Kaua'i Island Utility Cooperative, Civ. No. 10-00169 ACK-LEK: Order Reversing in Part and Affirming in Part the Magistrate Judge's Order Granting in Part and Denying in Part Defendant's Motion to Stay